## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ALI KOURANI, #79196-054,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )    **Case No. 21-cv-01721-JPG** |
| | ) |
| **DAN SPROUL,** | ) |
| **E. HARBISON,** | ) |
| **and R. PASS,** | ) |
| | ) |
| **Defendants.** | ) |

## <u>MEMORANDUM AND ORDER</u>

**GILBERT, District Judge:**

Plaintiff Ali Kourani, an inmate in the custody of the Federal Bureau of Prisons ("FBOP") and housed at the United States Penitentiary in Marion, Illinois ("USP-Marion"), brings this action for Eighth Amendment violations resulting from the denial of medical care by officials at USP-Marion pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).  (Doc. 1-1, pp. 2-11).  He also brings claims against these officials for medical malpractice, negligence, civil conspiracy, and intentional infliction of emotional distress under Illinois law.  (*Id*. at 6).  He seeks declaratory, monetary, and injunctive relief.  (*Id*. at 10-11).

Kourani originally filed his Complaint in state court.  (Doc. 1).  Defendants removed the case to federal court pursuant to the Westfall Act, 28 U.S.C. § 2679, and the federal officer removal statute, 28 U.S.C. § 1442(a)(1).  (*Id*.).  As explained below, the Court finds that removal is proper.

The Complaint is also subject to preliminary review under 28 U.S.C. § 1915A.  *See Whiteside v. Hill, et al.*, No. 21-cv-00806-JPG, 2022 WL 970586 (S.D. Ill. March 31, 2022) (conducting preliminary review of removed complaint under 28 U.S.C. § 1915A).  Section 1915A requires the Court to screen prisoner complaints to filter out non-meritorious claims.  28 U.S.C.

1

§ 1915A(a).  Any portion of a complaint that is legally frivolous, malicious, meritless, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).  At this juncture, the factual allegations of the *pro se* complaint are liberally construed.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

The Complaint sets forth the following allegations (Doc. 1-1, pp. 6-11): Kourani is a federal inmate who has been housed in USP-Marion's communications management unit ("CMU") since March 17, 2021.  (*Id*. at 6).  He suffers from anxiety and depression, which he has managed with prescription medications and exercise since he was housed at Metropolitan Correctional Center in New York ("MCC-New York").  (*Id*.).  Kourani also suffers from obesity that causes pain in his back, legs, and ankles when ambulating.  He was issued ankle braces for an ankle/knee injury at MCC-New York and continued to wear both braces to support his ankles while staying active. However, his braces were confiscated in transit to UPS-Marion.  (*Id*. at 6-7).

The day after he arrived at USP-Marion, Kourani met with Clinical Director Pass for a medical examination and psychiatric medication on April 18, 2021.  (*Id*. at 7).  Kourani reported that his right ankle was still injured.  He also requested two ankle braces, orthopedic shoes, and exercise opportunities to help manage his obesity and mental health issues.  Pass reviewed Kourani's right ankle x-rays from MCC-New York and issued him a single right ankle brace after confirming his pre-existing injury.  Pass denied Kourani's request for a left ankle brace and orthopedic shoes.  (*Id*.).

While playing volleyball on May 18, 2021, Kourani twisted his left ankle.  The following day, Kourani could not walk due to swelling, bruising, and pain in his ankle.  He told Health Services Administrator Harbison about this new injury and showed her his ankle.  Kourani

2

specifically requested treatment with a doctor, ankle x-rays, a wheelchair, crutches, ace bandages, and ice packs.  Although his name was recorded, no medical care was provided.  From May 19, 2021 until May 23, 2021, Kourani remained bedridden and in pain, relying on other inmates to bring him food, water, and ice while he awaited medical attention.  (*Id.*).

On May 23, 2021, Kourani went to the CMU Officer's station seeking medical attention and met with Nurse McGee later that day.  Kourani reported his injury to the nurse, showed her the swelling and bruising, and again requested treatment.  She also wrote down his name but took no action to treat him.  (*Id.*).

Several days later, Kourani met with McGee, Hughes, and Moulton[1] at sick call to address his complaints of ongoing and excruciating pain and immobility.  He reported the same symptoms at sick call on six subsequent occasions.  Even so, Kourani received no medical treatment for the left ankle injury.  For the next three weeks, Kourani could barely move and suffered persistent pain.  Warden Sproul, Harbison, and others disregarded his complaints.  (*Id.*).

As Kourani's ability to move diminished in the months that followed, his anxiety, depression, and obesity worsened.  He was soon unable to run, jump, climb stairs, or put weight on his ankles for long periods of time.  Kourani required more exercise to promote better physical and mental health, but he was unable to ambulate without medical treatment.  He regularly complained about these matters to Sproul, Harbison, Pass, and others.  However, none of them touched, examined, or treated his injury.  They instead approached his medical care as a privilege and denied it altogether.  (*Id.*).

---

[1] McGee, Hughes, and Moulton are not named as defendants, and Kourani brings no claim against any of them in the Complaint.

3

On July 14, 2021, Kourani spoke to Sproul and Harbison together.  He showed them his bruised and swollen left ankle.  Although Harbison again wrote down his name, the defendants took no steps to treat his injury.  (*Id*.).

Kourani filed one or more grievances to address the matter, but his grievances and appeals were denied as untimely even as the issue remained ongoing.  (*Id*. at 8).  He requested a copy of his medical records, only to discover no record of his injury or complaints.  Kourani has since received no medical care for his injuries from Sproul, Pass, or Harbison, and maintains that they conspired to deny him medical treatment at USP-Marion.  (*Id*.).

In closing, Kourani reports that Physician's Assistant L. Brooks agreed to x-ray his left ankle on October 28, 2021.  He requested a left ankle brace or bandage, but she "refused until an x-ray [was] done."  (*Id*. at 9).  Kourani goes on to state that "[s]he did what supposedly should have been done five months ago."  (*Id*.).  He does not name Brooks as a defendant or bring any claims against her for the denial of medical care, x-rays, or ankle braces.  (*Id*.).

Based on the allegations, the Court finds it convenient to designate the following enumerated Counts in the *pro se* Complaint, consistent with Kourani's designation of the same:

**Count 1:**   Eighth Amendment claim for money damages against Sproul, Harbison, and Pass, in their individual capacities pursuant to *Bivens*, for denying Kourani timely and adequate medical care for his left ankle at USP-Marion in 2021.

**Count 2:**   Eighth Amendment claim for injunctive relief against Sproul, Harbison, and Pass, in their official capacities pursuant to *Bivens*, enjoining them from further denial of medical care and requiring them to provide Kourani with x-rays of both ankles, braces for both ankles, and physical therapy.

**Count 3:**   Illinois medical malpractice claim for money damages against Sproul, Harbison, and Pass for denying Kourani ankle braces and other medical care for his swollen ankles, despite observing the swelling and obvious need for immediate medical attention at USP-Marion in 2021.

4

**Count 4:**    Illinois negligence claim for money damages against Sproul, Harbison, and Pass for breaching their duty to provide Kourani with medical care for his foot and ankle injuries at USP-Marion in 2021.

**Count 5:**    Illinois civil conspiracy claim against Sproul, Harbison, and Pass for reaching an agreement to deny Kourani medical care at USP-Marion in 2021.

**Count 6:**    Illinois intentional infliction of emotional distress claim against Sproul, Harbison, and Pass arising from their knowing and intentional denial of all medical care at USP-Marion.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by the Court.  Any other claim that is mentioned in the Complaint but not addressed herein should be considered dismissed without prejudice as inadequately pled under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### Removal

Defendants removed this case pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1), and the Westfall Act, 28 U.S.C. § 2679. (Doc. 1).  Kourani raised no objection to the removal.  (Doc. 9).  The Court finds that removal is proper for the reasons set forth below.

**A.    Federal Officer Removal – Counts 1 and 2**

Defendants argue that the federal constitutional claims against them can be removed pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1442(a)(1).  (*Id*. at ¶¶ 11-12).  Section 1442(a)(1) governs removal of claims against officers of the United States who are sued in their individual or official capacity for acts under color of such office or in the performance of such duties. Defendants Sproul, Harbison, and Pass are named in connection with two claims for constitutional deprivations brought pursuant to *Bivens*, including an Eighth Amendment claim for money damages against the individual federal agents (Count 1) and an Eighth Amendment claim for injunctive relief against the defendants in their official capacities (Count 2).  Both claims arise

5

from allegations of misconduct by these federal officials while acting under the color of their office or performance of such duties.   The federal officer removal statute governs removal of these claims.

Section 1442(a)(1) provides for removal to the United States District Court embracing the place where the civil action is pending.  28 U.S.C. § 1442(a)(1).  This action was originally filed in the Circuit Court for the First Judicial Circuit in Williamson County, Illinois.  *See Ali Kourani v. Dan Sproul, et al.*, Case No. 21-L-148.  (Doc. 1-1, pp. 2-11).  Williamson County is located in this federal judicial district.  Accordingly, Counts 1 and 2 were properly removed here under the federal officer removal statute, and they are subject to screening under Section 1915A below.

**B.      Removal under Westfall Act – Counts 3 through 6**

The Westfall Act also provides for removal of actions commenced in state court to the federal district court "embracing the place in which the action or proceeding is pending."  *See Osborn v. Haley*, 549 U.S. 225, 230 (2007) (citing 28 U.S.C. § 2679(d)(2)).  However, the Westfall Act covers tort claims and not constitutional claims.   It grants federal employees absolute immunity from tort claims arising out of acts undertaken in the course and scope of a federal employee's employment. *See Osborn*, 549 U.S. at 230 (citing 28 U.S.C. § 2679(b)(1)).  It amended the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-80, to require substitution of the United States as a defendant in a tort suit brought against a government employee. *Id*. at 230.  The Westfall Act empowers the Attorney General to certify that a federal employee sued for wrongful or negligent conduct "was acting within the scope of his office or employment at the time of the incident out of which the claim arose," and renders the Attorney General's certification "conclusiv[e] . . . for purposes of removal." *Id*. (citing 28 U.S.C. §§ 2679(b)(1), (d)(1), (2)).  Upon

such certification, the United States is substituted as the defendant in place of the federal employee, and the employee is dismissed.  *Id.* (citing § 2679(d)(2)).  The FTCA then controls the claims.

This action involves four Illinois tort claims against Sproul, Harbison, and Pass for medical malpractice (Count 3), negligence (Count 4), civil conspiracy (Count 5), and intentional infliction of emotional distress (Count 6).  Along with the Notice of Removal, Defendants provided proper certification[2] of their employment with the BOP during the relevant time period.  (*Id.* at ¶ 3).  Defendants also assert that they were acting within the scope and course of their federal office or employment.  (*Id.* at ¶¶ 4-8).  They properly removed their tort claims to this federal judicial district.  Accordingly, the United States shall be substituted in place of the individual defendants in Counts 3, 4, 5, and 6, and the individual defendants shall be dismissed.  These claims shall instead proceed as FTCA claims against the United States, if they survive Section 1915A review.

### Section 1915A Review

### *Bivens* Claims

A.    **Count 1**

In *Bivens*, the Supreme Court recognized that "victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *Carlson v. Green*, 446 U.S. 14, 18 (1980).  Claims have been recognized in contexts that include an unlawful search and seizure in violation of the Fourth Amendment, denial of due process in violation of the Fifth Amendment, and deliberate indifference to a serious medical need in violation of the Eighth Amendment. *Bivens*, 403 U.S.

---

[2] A United States Attorney may issue the certification in lieu of the Attorney General.  *See* 28 C.F.R. § 15.4(a).  In the instant case, the United States Attorney delegated this authority to the Chief of the Civil Division, who certified that all Defendants were acting with the scope of their employment at the time of the incidents out of which the claims arose.  (Doc. 1-2).

388 (Fourth Amendment unlawful search and seizure); *Davis v. Passman*, 442 U.S. 228 (1979) (Fifth Amendment gender discrimination); *Carlson*, 446 U.S. 14 (Eighth Amendment denial of medical care). The Supreme Court has more recently cautioned courts against expanding this remedy into new contexts absent special circumstances. *Ziglar v. Abbasi*, -- U.S. --, 137 S.Ct. 1843 (2017). However, this case presents a classic context akin to *Carlson v. Green*, 446 U.S. 14 (1980).

Kourani brings his Eighth Amendment claim for money damages against the individual federal agents who denied him medical care for his left ankle injury at USP-Marion: Sproul, Harbison, and Pass. (Doc. 1-1). Each individual allegedly acted with deliberate indifference when he or she delayed or denied Kourani medical care, x-rays, braces, orthopedic shoes, and/or other assistive devices for his left ankle injuries at USP-Marion. (*Id.*). These allegations state a claim against all three individual defendants. Accordingly, Kourani may pursue this constitutional claim for money damages against Sproul, Harbison, and Pass.

**B.   Count 2**

Kourani brings a related claim for injunctive relief against the defendants in their official capacities. (Doc. 1-1, pp. 8, 10-11). He seeks an order requiring the defendants to provide him with ankle x-rays, ankle braces, orthopedic shoes, and physical therapy. (*Id*. at 8, 10-11). He characterizes Count 2 as an "injunctive relief claim under *Bivens*." (*Id*. at 8). In connection with this claim, Kourani names the three defendants in their official capacities.

The Court takes issue with Kourani's characterization of Count 2 as an "injunctive relief claim under *Bivens*." *Bivens* provides an implied *damages* remedy against a federal agent in his or her *individual* capacity. The Court separately takes issue with his request for injunctive relief against three individual defendants in their official capacities. A request for injunctive relief

normally proceeds against a high-ranking official—such as the warden—in his or her *official* capacity.

With that said, the Court will not dismiss Kourani's request for injunctive relief in Count 2 simply because of his inartful pleading at this time. He is a *pro se* plaintiff, and his pleadings are liberally construed at this early stage. *Rodriguez*, 577 F.3d at 821. Kourani has been allowed to proceed with his *Bivens* claim against the individual defendants in Count 1. That claim survived screening based on allegations that a constitutional injury arose out the action of individual federal agents—regardless of the nature of relief sought. *Bunn v. Conley*, 309 F.3d 1002, 1008 (7th Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 851 (1994) (vacating the dismissal of a prisoner's *Bivens* action in which the prisoner sought injunctive relief). Count 2 amounts to little more than a request for relief in connection with Kourani's preceding claim.

The Eighth Amendment claim gives rise to general federal question jurisdiction under 28 U.S.C. § 1331. *See, e.g., Bolden v. Federal Bureau of Prisons*, No. 14-cv-103-WTL-MJD, 2015 WL 74080 (S.D. Ind. Jan. 6, 2015) (federal court had subject matter jurisdiction over prisoner's Eighth Amendment deliberate indifference to medical needs claim for equitable relief under 28 U.S.C. § 1331 even where he failed to bring claim pursuant to *Bivens* or FTCA). Section 1331 vests this court with equitable powers that include the authority to issue an injunction in appropriate cases. *See Bell v. Hood*, 327 U.S. 678, 684 (1946) (when a federal protected right has been invaded, "it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief") (citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 162-63 (1803)). *See also Bivens*, 403 U.S. at 402-03 (Harlan, J., concurring) (if "a general grant of jurisdiction to the federal courts by Congress is thought adequate to empower a federal court to grant equitable relief for all areas of subject-matter jurisdiction enumerated therein, [*see* 28 U.S.C.

9

§ 1331], then . . . the same statute is sufficient to empower a federal court to grant a traditional remedy at law."). To the extent Kourani wishes to proceed with a request for injunctive relief in connection with his Eighth Amendment claim, he shall be allowed to do so for now.

However, the appropriate individual for carrying out such relief is the current warden, in his or her official capacity, and not the three defendants, in their official capacities. Therefore, the Clerk of Court shall be directed to add the current warden of USP-Marion as a defendant, in his or her official capacity only, for purposes of implementing any injunctive relief awarded in Count 2. This claim shall be dismissed against the three named defendants, in their official capacities.

### **FTCA Claims**

The FTCA allows civil actions for money damages against the United States for personal injury or death caused by the negligent or wrongful act or omission of any Government employee while acting within the scope of his or her office or employment. *See* 28 U.S.C. § 1346(b)(1). When considering an FTCA claim, the Court looks to the law of the state where the misconduct occurred. *Augutis v. United States*, 732 F.3d 749, 752 (7th Cir. 2013) (court considering an FTCA claim looks to the state tort law of the state where the tortious conduct occurred). Counts 3 through 6 arise from tortious conduct that allegedly occurred in Illinois. Given this, Illinois law controls these claims.

### A.    Count 3

Under Illinois law, a medical malpractice claim must be supported by an affidavit stating that "there is a reasonable and meritorious cause" for litigation of the claim, and it must be supported by a physician's report that complies with the requirements of 735 ILCS § 5/2-622. Kourani did not submit the affidavit or report with his Complaint. His failure to do so is not dispositive of his claim at screening. *See Young v. United States*, 942 F.3d 349 (7th Cir. 2019).

10

To survive a motion for summary judgment, however, he must comply with this requirement by filing the appropriate affidavit or certificate of merit along with a physician's report. Count 3 shall proceed as a FTCA claim against the United States arising from medical malpractice by federal agents at USP-Marion in 2021.

## B.    Count 4

In Count 4, Kourani claims the above acts also constituted negligence.[3]  In order to state a claim for negligence under Illinois state law, a complaint must allege facts to establish that the defendant owed Kourani a duty of care, breached that duty, and that the breach was the proximate cause of the Kourani's injury. *Thompson v. Gordon*, 948 N.E.2d 39, 45 (Ill. 2011). Kourani asserts that the BOP officials had a duty to provide him with medical care while in custody, breached that duty, and caused his injuries. Accordingly, Count 4 shall proceed at this juncture.

## C.    Count 5

In Count 5, Kourani alleges a civil conspiracy among the named federal officials to unlawfully deny him all medical treatment at USP-Marion. In order to prevail on this claim under Illinois law, a plaintiff must demonstrate: "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (citing *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999)). Kourani maintains that the named BOP officials agreed to deny all requests for medical care during

---

[3] Illinois courts have held that Section 2-622 applies to negligence by a medical provider as well as medical malpractice. *See, e.g., Hutton v. Holy Cross Hosp.*, 2012 WL 6965235, at *4-5 (Ill. App. 1, Dist. 2012) (citing 735 ILCS § 5/2-622 (West 2010)) (affirming dismissal of third amended complaint for failure to support medical negligence claim with Section 2-622 affidavit and for failure to allege sufficient facts to state claim under Section 2-615).

his incarceration at USP-Marion in 2021, that such conduct was unlawful, and that he suffered injuries and pain as a result. The allegations support an FTCA claim against the United States based on civil conspiracy at screening, so Count 5 shall receive further review.

**D.    Count 6**

In Count 6, Kourani maintains that the ongoing and outright denial of medical care at USP-Marion in 2021 caused the intentional infliction of emotional distress. To proceed with this claim under the FTCA, he must show that the BOP officials acted in an extreme and outrageous way, intended to inflict severe emotional distress or knew of the high probability that it would occur, and caused the plaintiff to suffer from severe emotional distress. *See Doe v. Calumet City*, 641 N.E.2d 498, 506-07 (Ill. 1994) (citing Restatement (Second) of Torts § 46, comment d (1965)). Kourani allegedly suffered intense and extreme feelings of depression and anxiety resulting from the intentional denial of medical care by officials at USP-Marion in 2021. Given these allegations, Count 6 shall also receive further review as an FTCA claim against the United States arising from the intentional infliction of emotional distress.

## Interim Relief

In his request for relief, Kourani seeks an ankle x-ray, physical therapy, orthopedic shoes, and ankle braces "immediately." (Doc. 1-1, pp. 10-11). He does not explicitly request a temporary restraining order ("TRO") or preliminary injunction or invoke Federal Rule of Civil Procedure 65. Moreover, Kourani offers only one piece of information about his care since July 2021. In his closing paragraph, he explains that P.A. Brooks provided an ankle x-ray and ankle braces in late October 2021. (Doc. 1-1, p. 9). Given this, the Court cannot determine what additional medical treatment he requires at this time. Kourani must fill in these blanks, by advising the Court what

medical care he has requested, received, and/or been denied since July 2021. Having failed to do so, Kourani's request for interim relief is **DENIED without prejudice**.

Kourani is free to file a separate motion seeking a TRO and/or preliminary injunction pursuant to Rule 65, if he believes interim relief is necessary. He may file a motion at any time during the pending action. In the motion, Kourani should describe the exact relief he needs and summarize the facts that support his request for relief.

### <u>Disposition</u>

**IT IS ORDERED** that the Complaint (Doc. 1-1) was properly removed to this Court and survives preliminary review under 28 U.S.C. § 1915A, as follows:

- **COUNT 1** will proceed as a claim for money damages against Defendants **SPROUL, HARBISON**, and **PASS**, in their individual capacities, pursuant to *Bivens*.

- **COUNT 2** will proceed as a claim for injunctive relief against the **CURRENT WARDEN of USP-MARION**, in his or her official capacity, pursuant to 28 U.S.C. § 1331. This claim is **DISMISSED** without prejudice against Defendants **SPROUL, HARBISON,** and **PASS**, in their official capacities.

- **COUNTS 3, 4, 5,** and **6** will proceed against Defendant **UNITED STATES** as claims brought pursuant to the Federal Tort Claims Act. The **UNITED STATES** is **SUBSTITUTED** as a defendant in place of Defendants **SPROUL, HARBISON,** and **PASS,** in connection with these claims, and **COUNTS 3, 4, 5,** and **6** are **DISMISSED** with prejudice against Defendants **SPROUL, HARBISON,** and **PASS**.

**<u>The Clerk of Court is DIRECTED to ADD the CURRENT WARDEN OF USP – MARION (official capacity only) as a defendant in CM/ECF in connection with Count 2; ADD the UNITED STATES as a defendant in CM/ECF in connection with Counts 3, 4, 5, and 6; and ENTER the standard qualified protective order under the Health Insurance Portability and Accountability Act.</u>**

**IT IS ORDERED** that Kourani's Motion for Proof of Service (Doc. 10) is **DENIED**, in light of the following service order.

The Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendants **SPROUL, HARBISON, PASS,** in their individual capacities, the **CURRENT WARDEN of USP-MARION**, in his or her official capacity only, and the **UNITED STATES**; the Clerk shall issue the completed summons.  The United States Marshals **SHALL** serve Defendants **SPROUL, HARBISON, PASS, USP-MARION's CURRENT WARDEN,** and the **UNITED STATES** pursuant to Fed. R. Civ. P. 4(e).  All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

In addition, pursuant to Fed. R. Civ. P. 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the Complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the Complaint, and this Memorandum and Order.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed without payment of fees was granted by the state court. *See* 28 U.S.C. § 1915(f)(2)(A).

14

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  4/21/2022**

<u>**s/J. Phil Gilbert**</u>
**J. PHIL GILBERT**
**United States District Judge**

<u>**Notice to Plaintiff**</u>

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**