UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALI KOURANI,<br><br>    Plaintiff,<br><br>  v.<br><br>DAN SPROUL, E. HARBISON, R. PASS, individually, DAN SPROUL as the current warden in his official capacity, and UNITED STATES OF AMERICA,<br><br>    Defendants. | Case No. 21-cv-1721-JPG |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on a motion for summary judgment. (Doc. 54). The remaining defendants filed their motion on April 1, 2024. Finding that there are no genuine disputes of material fact and the Defendants are entitled to judgment as a matter of law, the Court hereby **GRANTS** the Defendants' motion for summary judgment on all counts and directs the Clerk of Court to enter judgment in favor of the Defendants accordingly.

### I.   INTRODUCTION

Plaintiff Ali Kourani is an inmate in the custody of the Bureau of Prisons, housed at Federal Correctional Institution Marion. He filed this suit alleging violations of his constitutional rights on December 20, 2021. Currently, there are only two surviving claims against the remaining Defendants:

Count I:   Eighth Amendment claim for money damages against Sproul and Pass, in their individual capacities, for denying Kourani timely and adequate medical care for his left ankle at FCI-Marion in 2021.

Count II:  Eighth Amendment claim for injunctive relief against Sproul and Pass, in their official capacities, enjoining them from further denial of medical care and requiring them to provide Kourani with x-rays of both ankles, braces for both ankles, and physical therapy.

1

## II.     BACKGROUND

As this matter comes before the Court on a motion for summary judgment, the Court interprets facts in the light most favorable to the non-movant—in this case, the Plaintiff.

The Plaintiff arrived at FCI-Marion on March 18, 2021. Dr. Pass saw the Plaintiff for his first 14-day examination on April 26, 2021. Approximately three weeks later, on May 18, 2021, the Plaintiff injured his ankle. The extent of his injury was not immediately apparent and his condition continued to worsen interfering with his ability to walk, sleep, and move. He repeatedly complained but was told that his complaints were untimely. The Plaintiff also had his braces, shoes, and bandages confiscated; he received no ice packs, and received no treatment or examination. His request for crutches and a wheelchair were both denied. He reported to sick call numerous times but was frustrated by lack of action. He claims that he showed Sproul his ankle personally on July 14, 2021. Kourani kept pushing for an x-ray of his ankle.

The Defendants have produced an extensive record of Kourani's interactions with medical personnel that contradict Kourani's allegations. These medical records reveal that Kourani was repeatedly seen by multiple doctors and medical personnel over the course of his incarceration. He was provided ankle braces and X-rays before but there did not seem to be any abnormalities. However, despite this, medical personnel continued to meet with Kourani in response to his complaints. Sproul apparently only spoke to Kourani on one occasion and Kourani was only seen by Dr. Pass a couple times in a few years, and at every meeting, Dr. Pass ordered testing or further evaluation.

Kourani filed his lawsuit in Williamson County Court in 2021. The Defendants removed that case to federal court in December of 2021. Kourani originally named many defendants, however, all but Sproul and Dr. Pass were dismissed from this suit.

While the motion for summary judgment was pending, Kourani had MRI imaging of his ankle that indicated there were no outstanding abnormalities. (Docs 58, 60). While the Plaintiff disputed the MRI findings, (Doc. 61), a radiologist filed a declaration confirming there was no signs of an acute condition and that any degradation present on the scans appear to be from wear and tear normal for someone of the Plaintiff's age; the radiologist added that "these findings may be amenable to *conservative* treatment at *most*." (Doc. 66, Ex. 1) (emphasis added).

### III. LEGAL STANDARD

#### A. Summary Judgment

Summary judgment is only proper "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Dynegy Mktg. & Trade v. Multi Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (citing FED. R. CIV. P. 56(a)) (internal quotation marks omitted). A material fact is one that is outcome determinative under applicable law, and a genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party seeking summary judgment bears the burden of demonstrating—based on the pleadings, affidavits, and other information submitted—the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a proper motion for summary judgment is made, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting FED. R. CIV. P. 56(e)(2)). A party can successfully oppose summary judgment by presenting definite, competent evidence to rebut it. *Szymanski v. Rite-Way Lawn Maintenance Co., Inc.*, 231 F.3d 360, 364 (7th Cir. 2000).

When presented with a summary judgment motion, the Court considers the facts in the light most favorable to the non-moving party. *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir.

2009). All reasonable inferences and doubts are resolved in favor of the non-movant. *Id*. Even if the material facts are not in dispute, summary judgment is inappropriate when the information before the Court reveals that "alternate inferences can be drawn from the available evidence." *Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004), *abrogated on other grounds by Spiegla II*, 481 F.3d at 966 (7th Cir. 2007).

### B. Eighth Amendment *Bivens* Claims by Convicts

The Eighth Amendment to the United States Constitution states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. IIX. While the Eighth Amendment "forbids cruel and unusual punishments; it does not require the most intelligent, progressive, humane, or efficacious prison administration." *Lee v. Young*, (7th Cir., 2008) (quoting *Anderson v. Romero*, 72 F.3d 518, 524 (7th Cir. 1995)).

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 388 (1971), allows plaintiffs to pursue constitutional claims against individual federal officers for violations of their rights. Plaintiffs may bring Eighth Amendment claims of inadequate medical care against federal officers pursuant to *Bivens*. *See Green v.Carlson*, 581 F.2d 669, 673 (7th Cir. 1978) (recognizing an implied damages remedy for constitutional claims of deliberate indifference to a serious medical condition under the Eighth Amendment against federal agents). To establish that their right under the Eighth Amendment against inadequate medical care was violated, a convict must show that (1) he or she had an objectively serious medical condition ("objective component") and that (2) the defendant(s) showed deliberate indifference to that condition ("subjective component"). *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

The subjective component, deliberate indifference, is not the test for medical malpractice. *See Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006). Rather, it requires that the defendants

disregarded the plaintiff's serious medical condition. *Id*. This is not a mere difference of opinion on treatment options, *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001), but "something approaching a total unconcern" for the convict's welfare. *Collins*, 462 F.3d at 762. A plaintiff is not required to "prove that his complaints . . . were 'literally ignored,'; rather, he must show only that [the] defendants' responses to it were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Haywood v. Hathaway*, 842 F.3d 1026, 1031 (7th Cir. 2016) (quoting *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008)).

IV.   ANALYSIS

A.   Count I

Kourani argues that a reasonable jury could not find for the Defendants on Count I. He recites the Eighth Amendment standard. Plainly, there is a dispute over whether his medical condition was objectively serious or not. The Defendants present ample evidence that there was no apparent abnormalities that would explain his pain—including MRI imaging of his ankle which, incidentally, is one reason this motion has been pending for as long as it has.

However, it is inappropriate for this Court to weigh that evidence at this stage. This is a dispute of material fact that the Court will interpret in favor of the Plaintiff. Accordingly, the Court will presume that his account of severe pain is accurate and true. Under that assumption, Kourani suffered from an objectively serious medical condition and, thus, Kourani satisfies the first element of his Eighth Amendment claim.

While Kourani's claim may survive the first element of the Eighth Amendment claim, the Defendants have presented sufficient evidence to prove that they do not satisfy the second required element; they were not deliberately indifferent. While the Plaintiff argues that his numerous complaints were met with no reaction, the Defendants have submitted many

supporting exhibits that corroborate their claims. If these records were not presented, whether Kourani or the Defendants were telling the truth would place this element in the realm of disputed material fact; however, because the Defendants have presented incontrovertible evidence of these communications, the only question remaining is whether their responses to Kourani's complaints was deliberately indifferent in their individual capacity. The Court finds that they were not.

Beginning with Sproul, he is the warden of FCI-Marion. He is not a doctor, a nurse, nor is he trained in medical treatment of prisoners. While the parties dispute whether Sproul was aware of Kourani's condition, even presuming that Sproul was aware, that awareness alone is insufficient to support a finding of deliberate indifference.

The standard for deliberate indifference related to medical care of prisoners is very high for non-medical personnel; this is borne out of an understanding that medical personnel are the best individuals to judge which conditions are real and which are not. It is the unfortunate reality of prison life that many inmates fake medical injuries to obtain medical devices or supplies in order to craft weapons. Knowledge of this reality informs a non-medically-trained prison official's determination whether medical care is obviously inadequate. Complaining to Sproul and showing him his bruised ankle does not pass that threshold, especially in Sproul's individual capacity. Accordingly, Sproul was not deliberately indifferent and he is entitled to summary judgment on Count I.

Turning to Dr. Pass, the prison doctor that directly interacted with Kourani on numerous occasions, he did not exhibit deliberate indifference. Just as jail and prison personnel defer to the medical decisions of medically trained personnel, for similar reasons, courts likewise defer to the medical decisions of medically trained personnel. The Court counts at least eleven (11) emails

that the Plaintiff sent regarding his condition. At one point in late September / early October of 2021, the Plaintiff submitted four emails each within three days of each other. Obviously, prison personnel are limited in how quickly they can respond to overwhelming, duplicative requests; yet respond they did. Every email that the Plaintiff sent, there was a response that instructed him to report to sick call. In fact, so numerous were the responses directing him to report to sick call that the Plaintiff grew frustrated and complained that reporting to sick call was not changing anything. (Doc. 54, Ex's 9, 15). Nearly every time the Plaintiff emailed and complained of ankle pain, the Plaintiff was seen by a nurse and/or Dr. Pass himself—on one occasion, the Plaintiff was scheduled for a medical appointment but refused to report to medical. (Doc. 54, Ex. 8). Thus, while Kourani complains about the repeated request to report to sick call without being placed on a list for a medical appointment, it appears that he may not have, in fact, reported to sick call as he claims. The Plaintiff sent an email claiming that he had already reported to sick call, but, in response to his email, medical personnel stated that were no records of this encounter. That individual suggests that perhaps the Plaintiff discussed his complaints with someone, but that there were no records of him reporting to sick call. However, as Count I only alleges claims against Dr. Pass in his personal capacity, the question is whether Dr. Pass's personal interactions with the Plaintiff demonstrated deliberate indifference; the Court finds that they did not.

   The Plaintiff was injured on May 18, 2021. From that point onward, the Plaintiff was only seen by Dr. Pass only thrice in three years: once on April 6, 2022—after an x-ray four months earlier found no abnormalities—then again for a different injury on March 24, 2023, and lastly on March 19, 2024.

   At the April 6 appointment, Dr. Pass noted his complaints of ankle pain and provided an

7

ankle brace as the Plaintiff had requested. (Doc. 54, Ex. 13). The Plaintiff did not submit another email to medical until nearly a year later, on January 8, 2023. In that email he wrote that he had "pain in [his] left ankle, precisely in the heel. The pain have been going *for more than a week now*." (Doc. 54, Ex. 14) (emphasis added). The Plaintiff's heel pain seems to be unrelated to his ankle pain. If it was, the Plaintiff would have referred to how long it had been since his ankle pain had begun—as he did in other emails prior to being provided with the brace by Dr. Pass.

At the second appointment with Dr. Pass on March 24, 2023, he specifically noted his complaints of ankle / heel pain. He also scheduled the Plaintiff for an orthopedic consult on July 1, 2023—four months from that date. Kourani did end up seeing an orthopedist in July of that year and was provided ankle braces at night. However, Kourani complained that he still suffered pain on the bottoms of his feet that the braces were unable to help with.

At his final appointment with Dr. Pass on March 19, 2024, Kourani asked for an MRI of his left ankle to "provide him some 'closure,'" as he was still experiencing pain in his ankle and now, allegedly, also pain in his knee. While an ordinary physician may have had some skepticism for the necessity of an MRI exam, Dr. Pass submitted a request for an MRI scan but that request was denied. Notwithstanding that denial, Dr. Pass notes that he would resubmit the request in the hope that it would be approved; which, evidently, it was. He also provided Kourani with a temporary low bunk permit—just as Kourani requested.

Presuming that Kourani's statements about his injuries are accurate, he suffered an objectively serious medical condition. Therefore, to establish liability, Kourani must show that Dr. Pass was *personally* deliberately indifferent to that condition. At every point Dr. Pass saw Kourani, he provided Kourani with what he requested—an ankle brace for his first injury; scheduling an orthopedic visit for his second injury; and providing a low bunk permit and

8

submitting a request for an MRI exam multiple times. No reasonable jury could find that Dr. Pass doing precisely what Kourani asked exhibited deliberate indifference to his medical needs. Accordingly, Dr. Pass is entitled to summary judgment on Count I.

Finding that Dr. Pass and Warden Sproul are entitled to summary judgment on Count I, the Court now moves to analyzing their liability under Count II.

### Count II

The Plaintiff next requests injunctive relief, specifically he demands that the Court order Sproul and Pass to provide him with medical equipment to treat his alleged objectively serious medical condition. However, the Court has already determined that the Defendants are entitled to summary judgment on Count I—as the Defendants were not deliberately indifferent to the Plaintiff's injury. One of the elements required for an injunction is a likelihood of success on the merits. Because the Court has determined his claim would be unsuccessful on the merits, traditional injunctive relief is unavailable.

Moreover, even if Kourani could show a prima facie case for injunctive relief, sovereign immunity forecloses injunctive relief for *Bivens* claims. *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 409-10 (1971) ("However desirable a direct remedy against the Government might be as a substitute for individual official liability, the sovereign still remains immune to suit. . . . For people in Bivens' shoes, it is damages or nothing"). Accordingly, Kourani cannot obtain the remedy he seeks under Count II.

Furthermore, the Court notes that Kourani's request for injunctive relief is either moot or unsupported by the record. First, Kourani asks for X-rays, however, not only has he previously had X-ray imaging in the past, he had MRI imaging—which is superior to an X-ray—making that request moot. Second, he asks for ankle braces; however, he was previously provided ankle

braces. Not only did he complain that the braces did not resolve his pain, he has not alleged that those braces have been confiscated from him. Third, he asks for physical therapy; however the MRI scans do not indicate any acute injuries warranting surgery—thus, it is unsupported by the record and certainly does not rise to the level required to override the medical judgment of medical personnel to pursue conservative treatment even *if* injunctive relief were available under *Bivens* and Kourani could demonstrate a prima facie case for injunctive relief.

In summary, because Kourani fails to establish a prima facie case for injunctive relief, sovereign immunity bars the Court from providing injunctive relief under *Bivens*, and Kourani's reuqests are either moot or meritless, no reasonable jury could find for the Plaintiff on Count II. Accordingly, the Defendants are entitled to summary judgment on Count II.

## V.   CONCLUSION

As the Plaintiff cannot establish that the Defendants were deliberately indifferent, and injunctive relief is unavailable under *Bivens*—and even if injunctive relief were available, the Plaintiff's requests are either moot or meritless—the Plaintiff has failed to show that there are any genuine issues of material fact. The Court finds that the Defendants are entitled to judgment as a matter of law on both counts.

Accordingly, the Court hereby **GRANTS** the Defendant's motion for summary judgment, (Doc. 54), and directs the Clerk of Court to enter judgment in favor of Defendant Dan Sproul and Defendant Dr. R. Pass and against the Plaintiff Ali Kourani on all counts.

**IT IS SO ORDERED.**
**DATED:  April 4, 2025**

*s/ J. Phil Gilbert*
**J. PHIL GILBERT**
**DISTRICT JUDGE**